UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY LYNCH-BEY,

    Plaintiff,                        CIVIL ACTION NO. 05-72378

    v.                                DISTRICT JUDGE NANCY G. EDMUNDS

PATRICIA CARUSO, *et al*.,        MAGISTRATE JUDGE VIRGINIA M. MORGAN

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

    Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC).  He brings this 42 U.S.C. § 1983 action to challenge the constitutionality of Michigan's parole policies.  Plaintiff has alleged a due process claim and an *ex post facto* claim. The defendants in this matter are Patricia Caruso, the Director of MDOC, John Rubitschun, the Chairperson of the Michigan Parole Board, and the other members of the Parole Board.[1] Plaintiff has sued these defendants in their official capacities.

    By order dated May 2, 2006, the district court referred the case to this court for all pretrial proceedings.  The matter comes before the court on Defendants' Motion for Dismissal or

---

[1] The other members of the Michigan Parole Board are James Atterberry, Miguel Berrios, Charles Braddock, Stephen Deboer, Enid Livingston, James Quinlan, Marianne Samper, Barbara Sampson, and Artina Hardman.

Summary Judgment. Defendants assert in their motion that plaintiff brought this action in the wrong venue, that he has failed to state a due process claim on which relief may be granted, that they are entitled to summary judgment on the *ex post facto* claim, and that plaintiff failed to satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a) prior to filing suit.

**II.  Background**

In 1982, a Wayne County jury found plaintiff guilty of second degree murder, breaking and entering, assault with intent to commit great bodily harm less than murder, arson, and armed robbery. Compl. ¶ 4. He was sentenced to life imprisonment, with the possibility of parole, for the second degree murder conviction. Id.

According to the allegations of the complaint, at the time plaintiff was sentenced, an inmate serving a parolable life sentence stood a reasonable chance of being paroled under the practices and procedures then in place. As one commentator stated, "[d]uring the 70's and 80's, it was generally believed by judges, defense attorneys and prosecutors that persons sentenced to parolable life sentences had a good chance of being released within 15 years of incarceration." Paul C. Loisell, "Unfair Parole Board Interpretation of Lifer Law," Michigan Criminal Law Annual Journal (2003).

Plaintiff claims that due to changes in parole policies that occurred in 1992, parolable lifers are, effectively, no longer eligible for parole consideration. He contends that the Parole Board has implemented a "life means life policy" and that his sentence has therefore been effectively increased in violation of the *Ex Post Facto* Clause of the U.S. Constitution. Plaintiff

also claims that the implementation of the "life means life policy" has resulted in a violation of his due process rights.[2]

### III. Discussion

#### A. Venue

Defendants first argue that plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue. The general venue statute, 28 U.S.C. § 1391, provides that a cause of action "not founded solely on diversity of citizenship" may be brought in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Defendants contend that in their official capacities, they are residents, for venue purposes, of Lansing, Michigan, where the MDOC and the Parole Board are headquartered. Lansing lies in the Western District of Michigan. Further, defendants argue that no event giving rise to this cause of action occurred in the Eastern District of Michigan and that there is otherwise no basis

---

[2] The court notes that plaintiff's case was consolidated with Kenneth Foster-Bey, *et al.*, v. John S. Rubitschun, *et al.*, E.D.Mich. No. 05-71318, a case involving a similar challenge to the Parole Board's alleged "life means life policy." Following consolidation, plaintiff moved to have his claims severed from that action. The district court granted the motion. As originally filed, plaintiff was one of eight named plaintiffs identified in the complaint. The district court severed only the claims of plaintiff Anthony Lynch-Bey.

for jurisdiction in the Eastern District. Plaintiff contends that venue is proper under subsection (1) and/or (2) of § 1391.

Defendants are correct in asserting that a state official sued in her official capacity resides in the place where the official performs her duties. O'Neill v. Battisti, 472 F.2d 789, 791 (6th Cir. 1972). However, defendants' collective suggestion that they perform no official duties in the Eastern District of Michigan is untenable. With respect to the members of the Parole Board, as the MDOC's own website shows, "Parole [B]oard members conduct prisoner interviews throughout facilities in Michigan. Each facility visit is for three to four days and a typical interview lasts 15 to 20 minutes." There are, of course, numerous MDOC facilities located in the Eastern District of Michigan. Thus, the Parole Board members necessarily travel to the Eastern District of Michigan to conduct parole interviews. While the Parole Board members may promulgate policies and make final parol decisions in Lansing, they perform other official duties on a regular basis in the Eastern District of Michigan and thus "reside" there, in their official capacities, within the meaning of § 1391(1).

The court also rejects the assertion that the MDOC Director may be sued only in the Western District of Michigan. In Bay County Democratic Party v. Land, 340 F.Supp.2d 802 (E.D.Mich. 2004), defendant Terry Lynn Land, the Michigan Secretary of State, sought dismissal of a § 1983 suit for improper venue, arguing, as defendants do here, that she performed her official duties in Lansing and, therefore, that she was not amenable to suit in the Eastern District of Michigan. Judge Lawson flatly rejected the argument: "The defendants' argument that Michigan's secretary of state performs her official duties only in Lansing, Michigan and

therefore may be sued only there does not withstand even the basest of analysis." Id. at 806.  In reaching that conclusion, Judge Lawson noted that the Secretary had "a statutory obligation to perform [her] official duties not only in Lansing but throughout the State," that the Secretary maintained and operated 173 branch offices throughout the state, as well as a number of mobile locations, and that the Secretary had been sued in both the Eastern and Western Districts of Michigan on numerous occasions.

     The court finds Judge Lawson's analysis to be persuasive.  Like the Secretary of State, the duties of the MDOC Director run state-wide.  The Director is responsible for overseeing operations at all 47 MDOC correctional facilities and 11 camps located throughout the State, promulgating the rules and regulations that govern the operations at those facilities and camps, and appointing the wardens of those facilities.  See MCL 791.203, .206, .263.  Given the scope of the Director's authority, it cannot reasonably be said that she performs no official duties in the Eastern District of Michigan.  Further, the Director has been sued numerous times in the Eastern District of Michigan.  The court is aware of no case, and defendants have cited none, in which it was determined that the Director could not be sued in this district. Accordingly, the court concludes that the Director, in her official capacity, "resides" in the Eastern District of Michigan such that suit may be brought against her in this District under § 1391(1).

     For the reasons stated above, the court recommends that defendants' request for dismissal on the ground of improper venue be denied.

### B.  Due Process

Plaintiff contends that the imposition of the alleged "life means life" policy resulted in a violation of his rights under the Due Process Clause of the Fourteenth Amendment.  Plaintiff appears to allege both procedural and substantive due process claims.  Defendants contend that plaintiff has failed to state a due process claim on which relief may be granted.

Defendants seek dismissal of plaintiff's due process claim pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether, "as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).  When reviewing such a motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's factual allegations as true.  Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998).  However, the court "need not...accept as true legal conclusions or unwarranted factual inferences." Kottmyer v. Mass, 436 F.3d 684, 688 (6th Cir. 2006).  In deciding a motion to dismiss under Rule 12(b)(6), courts ordinarily consider only the allegations made in the complaint, but a court may also consider, among other things, documents attached to the complaint.  See Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001); see also Fed. R. Civ. P. 10(c).  Dismissal under Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Bloch, 156 F.3d at 677.

Both plaintiff's procedural and substantive due process claims are based on the following premise:

> ...The Due Process Clause of the Fourteenth Amendment to the
> United States Constitution is violated because plaintiffs have not
> been sentenced on accurate information when as here, the
> Department of Corrections subsequently makes abrupt changes in
> its interpretation and application of the laws governing parolable
> lifers and retroactively applies it to plaintiffs and all similarly
> situated lifers imprisoned long beforehand with the intent to injury
> them unjustifiably.

Compl., ¶ 252(II).

In the Foster-Bey case, see fn. 2, supra, the plaintiffs alleged, as plaintiff alleges here, that the "life means life" policy violated their due process right to be sentenced based on accurate information. Judge Edmunds concluded that the claim, which was brought as a procedural due process claim, was not actionable, stating the following:

> The Fourteenth Amendment prohibits states from depriving a
> person of "life, liberty, or property" without due process of law.
> U.S. CONST. amend. XIV, § 1.  The courts have found that this
> clause gives rise to two types of claims–procedural and
> substantive.  Plaintiffs' claim involves the former.  That is, they
> contend that the procedures followed before making a decision
> regarding parole do not satisfy the minimum level required by the
> Constitution.
>
> Th[e Sixth Circuit] applies a two-part analysis to procedural due
> process claims.  First, the court must determine whether the
> interest at stake is a protected liberty or property right under the
> Fourteenth Amendment.  Only after identifying such a right do
> [courts] continue to consider whether the deprivation of that
> interest contravened notions of due process.
>
> *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 58, 762-63
> (6th Cir. 2005)(quotation and citation omitted).
>
> The right to parole (i.e., the interest at issue here) cannot be
> classified as any conceivable type of property.  Thus, to implicate
> procedural due process protection, it must be a liberty interest.  In

> *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994)(en banc), however, the Sixth Circuit ruled that, in Michigan, "the parole discretion is broad...." Therefore, "'the Stated has not created a constitutionally protected liberty interest' by enacting procedural rules." *Id*. at 1165 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). Although this holding seems to end the inquiry, Plaintiff have come up with a novel approach in an attempt to keep the claim alive.
>
> Plaintiffs first assert that the Due Process Clause entitled them to be sentenced based on accurate information. Relying on this rule, they contend that the Constitution was violated because the sentencing judge assumed that the parole procedures in place at the time of the conviction would continue to be used. Plaintiffs' premise is correct–a judge's reliance on a factual error in sentencing does not violate due process. *See Collins v. Buchkoe*, 493 F.2d 343, 346 (6th Cir. 1974). However, their conclusion is incorrect–in this case, there was not an error that creates a due process violation. If the sentencing judge assumed that the parole procedures would not change, this was improper. The procedures are consistently altered. Moreover, even if the procedures change, there is no assurance that a person, after conviction and sentence, will ever satisfy the substantive requirements necessary for parole. Thus, Plaintiff's argument must be rejected. To hold otherwise would permit a plaintiff to bring a due process claim that would directly conflict with the Sixth Circuit's holding that, in Michigan, a liberty interest does not exist in parole. Defendants' motion to dismiss this count is therefore granted.

Kenneth Foster-Bey, *et al.*, v. John S. Rubitschun, *et al.*, E.D.Mich. No. 05-71318, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, p. 13-14 (Edmunds, J., August 18, 2005, D/E # 44).

Plaintiff's claim is substantively indistinguishable from the claim rejected by Judge Edmunds in the Foster-Bey case. The court agrees with Judge Edmund's analysis and thus concludes that plaintiff has failed to state a procedural due process claim on which relief may be

granted.  See also Shultz v. Rubitschun, 2005 WL 3262435, at * 3 (W.D.Mich), and cases cited therein.

Plaintiff also alleges that the "life means life policy" violates his substantive due process rights.  "Fundamentally, the substantive component of the due process clause insulates citizens against the arbitrary exercise of governmental power."  Claybrook v. Birchwell, 199 F.3d 350, 359 (6th Cir. 2000).  Where, as here, no fundamental constitutional right is implicated, official action will rise to the level of a substantive due process violation only where it shocks the conscience.  Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996).  Whatever the meaning of the amorphous "shocks the conscience" standard, the court concludes, as a matter, of law, that the "life means life policy" is not shocking to the conscience as applied to plaintiff.  Plaintiff was convicted by a jury of second degree murder and lawfully sentenced to a term of life imprisonment.  It is certainly not shocking to the conscience to enforce a valid life sentence imposed for the intentional taking of another human life.  Moreover, at the time plaintiff was sentenced, he had no claim of right or entitlement to future parole.  Petitioner had, at best, a possibility of being paroled if he maintained a clean prison disciplinary record and otherwise met the criteria for release on parole.  See Hurst v. Department of Corrections Parole Board, 119 Mich.App. 25, 28-29, 325 N.W.2d 615 (1982)("[T]he early parole provision of the Michigan parole statute...only creates an expectation or hope of an early parole."); see also Canales v. Gabry, 84 F.Supp. 1167, 1171 (E.D.Mich. 1994).  The extinguishment of a mere hope of being paroled from a validly imposed life sentence is not, in the court's view, such an extraordinary abuse of power as to be properly characterized as "conscience shocking."

For these reasons, the court concludes that plaintiff has failed to state either a procedural due process or a substantive due process claim on which relief may be granted and, therefore, that plaintiff's due process claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### C.  Ex Post Facto

Plaintiff also alleges that the "life means life" policy has transformed his parolable life sentence into a life sentence without the possibility of parole in violation of the *Ex Post Facto* Clause.  Defendants have moved for summary judgment regarding this claim.  However, upon review of plaintiff's lengthy and detailed complaint, the court concludes that plaintiff has failed to state an *ex post facto* claim on which relief may be granted and, therefore, that the claim should be disposed of pursuant to Fed. R. Civ. P. 12(b)(6).

The Constitution prevents the states from passing *ex post facto* laws. U.S. Const. Art. I, § 10, cl. 1.  "One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission."  Garner v. Jones, 529 U.S. 244, 249-50, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000).  Changes in parole laws, applied retroactively, may run afoul of this clause. Id., 529 U.S. at 250.  However, the *Ex Post Facto* Clause does not guard against changes in the prevailing views of the individual members of a parole board or the appointment of a board consisting of members who are less inclined to grant parole than their predecessors.  See Id., 529 U.S. 259 ("[T]he *Ex Post Facto* Clause gives respondent no cause to complain that the Board in place at the time of his offense has been replaced by a new, tough-on-crime Board that is much more parsimonious with

parole[.]")(Scalia, J., concurring).  That is precisely the nature of plaintiff's challenge in this matter.  As his complaint makes clear, plaintiff does not allege that a change in Michigan's parole statutes has effectively increased his punishment or that the Parole Board has promulgated a rule, regulation, or formal policy having that effect.[3]  Rather, he alleges that the current board has adopted a new philosophy regarding parolable lifers – a "life means life" philosophy – that is less favorable to him than the philosophy held by previous board members.

In Schultz, supra, 2005 WL 3262435, at *5 (W.D.Mich.), the plaintiff, a sex offender, sought to challenge, on *ex post facto* grounds, "an alleged unwritten policy that sex offenders will generally not be granted parole and the practice of automatically assigning sex offenders a -

---

[3]Plaintiff refers to numerous statutory provisions and regulations in his verbose complaint, but he appears to attack only the Parole Board's alleged "life means life policy," as indicated in the "Preliminary Statement" section of the complaint:

> 2.  These claims arise out of the retroactive application of the Michigan Department of Corrections' new "Life Means Life" policy and practice which was enacted long after the Plaintiffs' crimes and sentences, is harsher because it sets forth a different "more onerous" decision making criteria, and applies a fixed rule denying parole consideration and eligibility as a matter of law, to Plaintiffs and other parolable lifers within various prisons of the Michigan Department of Corrections....
>
> 3.  The Plaintiffs complaint that, in refusing to use the parole procedures and decision making criteria in place and which were clearly established at the time of their crimes and sentences, and by continuing to arbitrarily apply its new "Life Means Life" policy...Defendants...violate the Ex Post Facto Clause of the United States Constitution...as well as the Due Process Clause of the United States Constitution[.]

Compl. ¶ 2,3.

5 mental health score." Chief Judge Bell, in concluding that plaintiff had failed to state an *ex post facto* claim on which relief could be granted, stated the following:

> It is clear that the controlling inquiry is whether the retroactive application of a later enacted law or policy will create a sufficient risk of increasing the measure of punishment attached to a particular crime. Here, unlike the plaintiff in *Garner*, Plaintiff is not challenging a newly enacted law, written policy or written rule. He is simply challenging the underlying philosophy that allegedly guides the current parole board members in making decisions regarding the release of sex offenders. The Ex Post Facto clause provides that "[n]o State shall...pass any...ex post facto Law." U.S. Const., Art. I, § 10, cl. 1. The wording of the Clause "leaves no doubt that it is a prohibition upon legislative action." A parole board member's philosophy regarding how best to protect public safety is simply not a law within the meaning of the Ex Post Facto Clause. Accordingly, that the collective philosophy of the parole board has evolved since Plaintiff was originally sentence[d] to a philosophy that may be adverse to Plaintiff does not implicate the Ex Post Facto Clause.

Schultz, 2005 WL 3262435 at *6 (citations omitted).

In Maile v. Lafler, 2006 WL 229876 (E.D. Mich.), a case quite similar to the instant case, an inmate serving a parolable life sentence filed a petition for a writ of habeas corpus, claiming, as plaintiff does here, that the Parole Board's "life means life policy" violated his rights under the *Ex Post Facto* Clause. Judge Tarnow ruled against the inmate, stating that "[t]he fact that the composition of the Michigan Parole Board has changed and that the current Parole Board has adopted a policy of granting early release less frequently to inmates serving parolable life sentences does not violate the *Ex Post Facto* Clause of the federal constitution." Id. at *6.

Drawing on the reasoning of Judges Bell and Tarnow, the court concludes that the "life means life policy" is not a "law" for *ex post facto* purposes.  Rather, it is simply a shorthand way of saying that a new board with less inclination to grant parole to parolable lifers has been installed.  As discussed above, the *Ex Post Facto* Clause is not implicated by a mere change in philosophy by the members of a parole board.  Accordingly, plaintiff has failed to state an *ex post facto* claim on which relief may be granted.

### D.  Exhaustion of Administrative Remedies

Defendants also seek dismissal on the ground that plaintiff failed to fully exhaust his administrative remedies prior to filing suit, as required under 42 U.S.C. § 1997e(a).  Having concluded that he has failed to state a claim on which relief may be granted, the court need not address the exhaustion issue.  See 42 U.S.C. § 1997e(c)(2)("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

### IV.  Conclusion

For the reasons stated above, the court recommends that defendants' motion to dismiss or for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

    Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                          S/VIRGINIA M. MORGAN
                          VIRGINIA M. MORGAN
                          UNITED STATES MAGISTRATE JUDGE

Dated:  October 19, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on October 19, 2006.

                                              <u>s/Kendra Byrd</u>
                                              Case Manager to
                                              Magistrate Judge Virginia M. Morgan